JOSEPH WASSERMAN et al., Doing Business under the Name of MAYFAIR NOVELTY COMPANY, Appellants-Respondents, *v.* BROADALBIN KNITTING Co., LTD., Respondent-Appellant.

Third Department, November 14, 1945.

*Bondy & Schloss,* attorneys (*Eugene L. Bondy* of counsel), for plaintiffs-appellants and respondents.

*Curtis & Warren,* attorneys (*Daniel H. Prior* of counsel), for defendant-respondent and appellant.

HEFFERNAN, J.  In this action plaintiffs are seeking to recover damages sustained by them because of the alleged failure of defendant to deliver merchandise under a written contract of purchase and sale.  Defendant denies that it breached its contract and pleads a counterclaim against plaintiffs because of their failure to comply with the contract.  The Trial Judge dismissed the claims of both parties and from that determination both have come to this court.

The facts in this case are not in dispute.  The principal ones appear in the dissenting opinion and need not be repeated here.

Leibner and Friedman had authority to solicit business for defendant.  Their authority was strictly limited to such solicitation.  Any order taken by them required confirmation by defendant.  Plaintiffs had full knowledge of the limitation of authority on the part of these agents.

On October 8, 1940, the parties to this action entered into the contract involved in this suit.  By the terms of that contract plaintiffs agreed to purchase from defendant, and defendant agreed to manufacture and sell to plaintiffs, 10,000 dozen sweaters, of various colors, at $6.625 per dozen.  The entire order was to be manufactured, delivered and accepted by plaintiffs by April 1, 1941.  One of the provisions of the contract is: "Speci-

fications applying to this contract must be given in ample time so that goods can be manufactured by the date of delivery indicated.''

The contract also provided that plaintiffs should furnish defendant specifications for size and color assortments from week to week.

On October 10, 1940, the soliciting agents wrote plaintiffs regarding the contract in which letter they stated, among other things: '' It is agreed by you that you will take in complete, all goods on this order by April 1, 1941.''

In response to this letter plaintiffs on October 16, 1940, wrote defendant a letter in which they said: '' We agree to take in all goods on this order by April 1st, 1941.''

From the date of the contract until the early part of March, 1941, defendant and its agents repeatedly endeavored to obtain from plaintiffs specifications of size and color assortments, without which defendant could not manufacture the sweaters, but without success. The excuse offered by plaintiffs for their failure to comply with the terms of the contract was that business was very poor and that they were hopeful that conditions would improve.

Unquestionably plaintiffs breached the contract made on October 8, 1940. In fact they make no pretense on this appeal that they complied with that agreement. By their failure to carry out the terms of their contract they prevented performance by defendant. It is their contention that by mutual consent the contract was modified to extend the time of performance to and including May 31, 1941.

In support of their claim that the contract was modified plaintiffs are relying entirely on a letter written by defendant to them under date of February 28, 1941, the pertinent parts of which are: '' As you know, the time limit on your present contract specifying ladies' sweaters is fast approaching the due date, and due to the fact that we were under the assumption at the time the orders were placed that we would be given a steady run, we hope that you will now be able to give us some real sizable releases. We stand ready to build up a sizable production quite quickly, so if you can work out a schedule with Messrs. Friedman & Leibner *on Monday of next week covering requirements for March, April and May, we assure you that it will be greatly appreciated.* Also, if you figure that 100 dozen or so a day will be sufficient for the time being we will operate on this basis, and of course will gladly arrange to step this up whenever you so instruct, or keep adding a

certain percentage each week until we get up to a certain capacity.

"We know that you will readily understand our position in this matter, and now assure you that your cooperation will be greatly appreciated. *After you have talked to Messrs. Friedman & Leibner on Monday and worked out a schedule we would be glad to have you phone us collect regarding this so that we can immediately get started.*" (Emphasis supplied.)

What happened after plaintiffs received that letter is of paramount importance in determining whether or not there was an extension as claimed by plaintiffs.

On March 3, 1941, plaintiffs requested Leibner and Friedman to visit them at their place of business. The agents complied with the request. Plaintiffs said they had defendant's letter of February 28th but could not furnish specifications. Not only did they say that but they also said that they could not go through with their contract.

On or about March 10, 1941, the agents again visited plaintiffs and insisted upon being furnished with specifications against the contract. Plaintiffs replied that their conditions had not changed and that they still had on hand "this terrific stock here and we are all choked up and we are still holding terrific quantities of this merchandise not only with you but with others with whom we are doing business and we can't go through with this contract; we hate to part with it; we would like to hang on to it but we can't go through with it."

On March 12, 1941, plaintiffs wrote defendant a most illuminating letter reading as follows:

"Gentlemen:

Mr. Leibner has been in to see us several times and you have written to us regarding specifications against our blanket order, and we are, therefore, writing to you at this time to explain the reason for our not giving you any.

We have been waiting from week to week for the season to open up on this item, but so far we have been disappointed. We, as you know, have quite a big stock on hand and we are, therefore, not in a position to put in any more stock for the time being or until we see that the demand is opening up.

We have confidence that the item will be good again as soon as the beachwear departments begin their promotions, and if we didn't have such a large stock, we would surely have put some in work.

*We ask your indulgence to bear with us yet for awhile.* We were very patient and indulgent with you in every respect

since we have been doing business together and we are asking the same treatment in return." (Emphasis supplied.)

In response to that letter defendant on March 17, 1941, wrote plaintiffs a letter in which it said, among other things: " We, of course, have not had instructions from you against this order which would be in accordance with our original understanding, and therefore state that it is very possible that we will not be able to make deliveries of any garments after the expiration of your order, which is April 1, 1941."

It is quite obvious that there was a substantial increase in the price of sweaters between March 12th and March 18th because on the latter date plaintiffs wrote defendant a letter containing specifications for 500 dozen. Defendant declined to comply with this demand and we think very properly so. In its letter of February 28, 1941, defendant offered to extend the time of performance to May 31, 1941, and to manufacture for plaintiffs during March, April and May if plaintiffs worked out a schedule with the selling agents on March 3, 1941. Plaintiffs made no such attempt to work out a schedule and never accepted the offer to extend the time of performance. On the contrary they definitely rejected it. The testimony and letters which we have quoted and particularly plaintiffs' letter of March 12, 1941, demonstrate beyond any possibility of doubt that they knew there was no extension in effect. They knew they were in default and they asked defendant's " indulgence to bear with us yet for awhile." The complaint was properly dismissed.

Coming now to defendant's counterclaim: We are convinced that it is meritorious. There was no breach of the contract by defendant. It was at all times ready to manufacture the garments. It made every effort to obtain from the plaintiffs specifications in order that it could begin manufacturing. The proof of damages is uncontradicted. Had plaintiffs fulfilled their contract defendant would have realized a profit of $2,550. Defendant is entitled to recover that amount (Personal Property Law, § 145, subd. 4; *Pierson & Co., Inc.*, v. *Nederlandsch-Indische, etc.*, 203 App. Div. 365; *James Talcott, Inc.*, v. *Marshall Field & Co.*, 15 N. Y. S. 2d 846, affd. 258 App. Div. 1045).

The judgment insofar as it dismisses plaintiffs' complaint should be affirmed, with costs and disbursements to defendant. That part of the judgment which dismisses defendant's counterclaim should be reversed on the law and facts and judgment is directed in favor of defendant on its counterclaim and against plaintiffs for the sum of $2,550 with interest from April 1, 1941.

HILL, P. J. (dissenting.) Cross appeals from a judgment dismissing plaintiffs' complaint, with costs, and disallowing defendant's counterclaim, following a trial in the Fulton County Trial Term by the court (LAWRENCE, J.) without a jury. Plaintiffs are copartners trading under the name of Mayfair Novelty Company, located in the city of New York, selling women's sweaters, among other things, to retail merchants. Defendant is a domestic corporation with principal place of business at Broadalbin, N. Y., engaged in the manufacture of yarn and knitted garments. It is admitted in the answer that Moe Friedman and Joseph Leibner were " held out * * * to the public generally and to the plaintiffs as its [defendant's] selling agents in the City of New York."

The subject matter of the litigation is an agreement made in October, 1940, by defendant to sell 10,000 dozen Spring colored sweaters at $6.625 per dozen to the plaintiffs, " size and color assortments to be given from week to week. Delivery to April 1st, 1941." The foregoing and other details appear in a letter signed by defendant. Its New York sales agents, Friedman and Leibner, in a letter specifying the element of time and another requirement, asked for confirmation. As to time the letter stated: " It is agreed by you that you will take in complete, all goods on this order by April 1, 1941. You also agree that you are and will be responsible for all yarn that will be involved in the order #14036 for 10,000 dozen garments."

Plaintiffs acknowledged the Friedman and Leibner letter directly to the defendant and said: " We agree to take in all goods on this order by April 1st, 1941, and also assume financial responsibility for the value of any portion of the yarn which you have purchased for this order, and, which for any reason on our part remains undelivered by April 1, 1941."

Defendant acknowledged plaintiffs' letter, and stated a further provision: " It is also our understanding that you expect to work with us * * * by having advance information to us three weeks ahead at all times so that we can wind the necessary yarns, knit, dye, cut and sew to make the required deliveries. We are to deliver against this order at the rate of 1200 to 1250 dozen per week when sufficient specifications are in to us. By March 1st we are to have specifications for any balance due against the order and this, of course, is not to exceed 4800 dozen to be delivered during the month." ·

There is little dispute on the facts, as the terms of the contract appear from the foregoing letters and others. There was a slight disagreement between the parties in January because

defendant failed to make what plaintiffs regarded as timely delivery of small orders which plaintiffs said were "for distribution purposes," but it has little if any bearing upon the issues litigated. Specifications for only a few hundred dozens of the sweaters had been given defendant by plaintiffs before February 28, 1941, when defendant wrote expressing regret that specifications as to color, size and the like had not been given. The letter says in part: "As you know, the time limit on your present contract specifying ladies' sweaters is fast approaching the due date, and due to the fact that we were under the assumption at the time the orders were placed that we would be given a steady run we hope that you will now be able to give us some real sizable releases. We stand ready to build up a sizable production quite quickly, so if you can work out a schedule with Messrs. Friedman & Leibner on Monday of next week covering requirements for March, April and May, we assure you that it will be greatly appreciated." The agent Friedman testifies that on Monday, March 3d, he with his partner, in answer to a telephone call from plaintiffs, went to their place of business and they were told about the letter, a portion of which is quoted. He says: "We asked them for specifications. Q. What did they say about the letter? A. They told us of the letter. Q. What did they say? A. They told us they received a letter from the mill and the letter asked them to get in touch with us and give us specifications. Q. Then what did they say? A. They said they couldn't do it and asked us to come back by the next week. Q. Did you go back again the next week? A. Yes. Q. What happened then? A. They again told us they couldn't give us any specifications."

The second visit apparently was on March 12th and on that date plaintiffs wrote defendant in part as follows: "Mr. Leibner has been in to see us several times and you have written to us regarding specifications against our blanket order, and we are, therefore, writing to you at this time to explain the reason for our not giving you any. We have been waiting from week to week for the season to open up on this item, but so far we have been disappointed. * * * We ask your indulgence to bear with us yet for awhile. We were very patient and indulgent with you in every respect since we have been doing business together and we are asking the same treatment in return." That letter was acknowledged on March 17th by defendant. The last paragraph stated: "We, of course, have not had instructions from you against this order which would be in accordance with our original understanding, and therefore state that it is very

possible that we will not be able to make deliveries of any garments after the expiration of your order, which is April 1, 1941. There are various reasons for this from our end, and inasmuch as our manufacturing program will not call for the manufacture of any garments after that date, we ask that you mark your records to conform.'' On the following day, March 18th, plaintiffs ordered 500 dozen and on March 19th, defendant wrote refusing to make delivery, saying that it was discontinuing the manufacture of all garments in the factory, and continuing: '' We trust you will understand our position in the matter, and surely if we were continuing garment operations in our factory we would have undoubtedly been willing to work along with you in every possible manner. We are sure you will agree that we have cooperated to the fullest extent in the past, and if it had not been for this particular order in our files, it is probable that operations in our garment department would have been brought to an end before this time. We ask that your records be marked to conform with the above, and with kindest regards remain.'' The evidence indicates that the reason for this change of attitude by the defendant was the sudden rise in the price of yarn. It is possible that plaintiffs' hurried order for 500 dozen on March 18th may have been induced by the same cause.

Upon the foregoing record defendant seeks to recover $2,550 against the plaintiffs. The only proof as to damages is testimony by defendant's vice-president and sales manager, as follows: '' Q. Have you computed the cost of your producing that order? A. I have. Q. Will you tell us the cost per thousand or any way that you can give it to us of your production of that order? A. The cost of that garment was six dollars and thirty-seven cents per dozen. Q. And the sales price to the customer was six dollars sixty-two and a half cents per dozen was it? A. That is right. Q. Leaving a profit to your company of how much per dozen? A. Twenty-five and a half cents.'' The same witness testified concerning the advance in price of yarn: '' Q. Now then had you pursuant to the guaranty [this referred to plaintiffs' guaranty against loss on the yarn] that you had obtained actually ordered the fifty per cent of the yarn needed to manufacture ten thousand dozens of these sweaters? A. We had contracted for it. Q. And isn't it the fact, sir, that the price of that yarn was far greater in March and April than in October, 1940? A. It probably was starting on the upward trend at that time.''

Defendant seeks a sizable judgment after making a substantial profit upon yarn which it had purchased under plaintiffs' guaranty against loss. Prior to the advance in the price of yarn, it was anxious to manufacture the sweaters, and waived the time limit of April 1st for delivery, and by the letter of February 28th extended the time through May. There had been delay on plaintiffs' part in giving specifications as to color and sizes, but defendant chose to keep the contract alive and to extend the termination date. '' It chose to keep the contract alive in spite of anything that had gone before. But a contract, thus preserved, remains alive as much for the benefit of the buyer as for the benefit of the seller. [Citations.] '' (*Rubber Trading Co.* v. *Manhattan R. Mfg. Co.*, 221 N. Y. 120, 126.) Had plaintiffs accepted the offer to extend deliveries through April and May, there would be no question of their right to recover. This they failed to do. However, defendant's agent Friedman, when told on March 12th to come back a week later, raised no objection. He was asked: '' Q. March 12th I am talking about? A. I said they were not ready to give us any specifications and they still said they would again give it to us later.'' Defendant's letter of March 17th did not cancel the contract or the offer of deliveries after the original closing date: '' It is very possible that we will not be able to make deliveries of any garments after the expiration of your order, which is April 1, 1941.'' It bears the construction of an attempt to accelerate the giving of specifications. The following day an order for 500 dozen with specifications was given, and defendant refused to make delivery. Defendant, under these facts, was obligated to make delivery. It is true that the letter of February 28th asked for a reply on the following Monday, March 3d, but not receiving it, defendant's agents continued to call up to March 12th, and defendant's accelerating letter of March 17th, accepted on the following day, created an obligation to make deliveries at least until April 1st (*Blumenthal & Co.* v. *Gallert & Co.*, 240 N. Y. 217), and plaintiffs are entitled to recover two dollars per dozen for the 500 dozen, and the judgment dismissing defendant's counterclaim should be affirmed.

Brewster and Foster, JJ., concur with Heffernan, J.; Hill, P. J., dissents in an opinion, and votes for a judgment of $1,000 in favor of plaintiffs, with interest from March 18, 1941; Lawrence, J., taking no part.

The judgment appealed from insofar as it dismisses plaintiffs' complaint is affirmed, with costs and disbursements to

defendant. The part of the judgment which dismisses defendant's counterclaim is reversed on the law and facts and judgment on such counterclaim in favor of defendant and against plaintiffs is hereby directed for the sum of $2,550 with interest from April 1, 1941.

The court finds as facts that defendant never breached the contract in suit; that at all times it was ready, willing and able to perform the same; that plaintiffs unlawfully refused to perform the contract on their part; that the contract made by the parties on October 8, 1940, was never modified and that the time for performance thereof was never extended beyond April 1, 1941; that as a result of plaintiffs' default defendant has been damaged in the sum of $2,550 with interest from April 1, 1941, and that it is entitled to judgment against plaintiffs for that amount.