958 P.2d 447

STATE of Arizona, ex rel., ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellee,

v.

HAVASU DUNES TIMESHARE ASSOCIATION, INC., Defendant–Appellant.

No. 1 CA–TX 97–0023.

Court of Appeals of Arizona, Division 1, Department T.

April 30, 1998.

Grant Woods, Attorney General by Sara D. Branscum, Assistant Attorney General, Phoenix, for Plaintiff–Appellee.

Chalpin & Tom, Ltd. by Mitchell A. Chalpin, Rick Kilfoy, Phoenix, for Defendant–Appellant.

PATTERSON, Judge.

¶ 1 Havasu Dunes Timeshare Association, Inc. (the Association) appeals from a judgment for the Arizona Department of Revenue (ADOR) on the Association's claim for a refund of transaction privilege taxes on the business of operating a hotel, motel, inn, lodging house, etc., or other structure occupied, intended or designed for occupancy by transients. Ariz.Rev.Stat. Ann. (A.R.S.) § 42–1310.10 (Supp.1997). The Association contends that the tax court erred in holding that the sums it received during the audit period from timeshare owners for "non-interval bonus use," or occupying condominium units for periods of time in addition to those that characterize their particular timeshare interests, constituted part of its gross income or gross receipts from engaging in the transient lodging business. The Association presents these issues:

1. Whether timeshare owners are transient lodgers while they engage in daily non-interval bonus use of timeshare units; and

2. Whether the Association engages in the transient lodging business with respect to timeshare owners who pay assessments for daily non-interval bonus use of timeshare units.

We have jurisdiction under A.R.S. section 12–2101(B). The Chief Judge has assigned this appeal to Department T of this court as required by A.R.S. sections 12–120.04(G) and 12–170(C).

**FACTS AND PROCEDURAL HISTORY**

¶ 2 Havasu Dunes timeshare condominium complex (the Complex) is a 94-unit horizontal property condominium complex in Lake Havasu City, Arizona. The units share common walls, but each has its own living area and is completely separate from all others. A unit may be a studio, one-bedroom, or two-bedroom. The Complex also comprises extensive common areas, including the land on which the units were built, the buildings themselves, a swimming pool, spa, exercise room, ice machine, laundry, sauna, barbecue area, owners' lounge, video rental machine, and similar amenities.

¶ 3 The Association is a non-profit Arizona corporation. The rights of the members of the Association are governed by the Conditions, Covenants and Restrictions (the CC & Rs) recorded against the property, the By–Laws of the Association and Articles of Incorporation. Since 1993, RCI Management (RCI) has managed the Complex.

¶ 4 The Association acts through its Board of Directors, each of whom is a member of the Association elected by vote of the membership. The membership consists of all the owners of the units. Paragraph 9.1 of the CC & Rs provides:

> Membership shall be appurtenant to and may not be separated from ownership of a Unit or Interval Unit which is subject to Assessment. The rights and obligations of an Owner and membership in the Association shall not be assigned, transferred, pledged, conveyed, or alienated in any way except by transfer of ownership to such Unit or Interval Unit. . . .

¶ 5 All portions of the Complex that are not Units or Interval Units are defined as Common Elements. The CC & Rs provide:

> 1.20 "Interval Ownership" (Timeshare Estate) means a conveyance in fee simple absolute of an undivided interest in a particular Unit, and an undivided interest in the Common Elements owned as tenants in common with all other Unit and Interval Unit Owners, together with a right to use a Unit annually for a stated period of time in accordance with this Declaration, the Bylaws and Rules and Regulations.

> . . . .

> 1.22 "Interval Unit" (Time-shared Unit) means and refers to a fractional fee simple interest in a particular Unit, together with the right to use an Interval in a compara-

ble Unit, and an unseverable membership in the Association.

. . . .

2.7(e)(2) Each Interval Unit owner shall own an undivided fractional interest in a particular Unit, except for those Units conveyed as Units not timeshared, together with an undivided interest in the Common Elements. Said fractional interest in a timeshared Unit for each Interval shall be a fraction with a numerator of 1 and a denominator which is 52. The undivided interest in the Common Elements for each Interval . . . is 1/1248.

¶ 6 By purchasing an interval unit at the Complex, the owner acquires the right to use, for one week each year, one unit of the particular cost and size class purchased. Although the owner's interval use is associated with a specific unit at the Complex when he purchases it, the owner has no right to use that particular unit. Instead, he may reserve the use of a unit in his cost/size class during a particular week up to twelve months in advance, and will be randomly assigned to an available unit of that class during the week specified.

¶ 7 The Association annually assesses the owners to cover the Complex's maintenance costs. Annual assessments are calculated according to overall insurance costs, property taxes, reserves for replacements and repairs, and other operating costs, following the assumption that each owner will make minimal interval use of the property. Owners must pay their annual assessments regardless of whether they actually use their week(s).

¶ 8 Under the CC & Rs, an owner of an interval unit has the right to obtain the use of another available interval unit for a week or weeks in addition to the interval unit that he owns. This practice is called "bonus use" or "non-interval use." Owners may reserve available units for non-interval use two to three weeks in advance. Owners pay the Association a daily fee, or "non-interval bonus use assessment," for non-interval use. The Association and its Board has sought to calculate this fee to equal and not to exceed the additional operating expenses that an owner's one-day non-interval use would generate. The non-interval bonus use assessment is due in addition to the annual assessment the owner is required to pay.

¶ 9 The Association also permits members of the general public to rent units for intervals that owners have not reserved for interval or non-interval use. These public rentals may be arranged no more than two weeks before the unit in question will be vacant. Public rentals are at market rates, approximately four times the fee/assessment charged to owners for non-interval use. The Association reports and pays transient lodging privilege taxes on its gross receipts from renting units to the general public. These taxes are not at issue in this litigation.

¶ 10 At the behest of ADOR, the Association has been collecting and paying transient lodging taxes on non-interval bonus use assessments since December 8, 1989. The Association filed requests for refunds of those taxes. An ADOR Hearing Officer granted the Association's request; however, the ADOR Director overruled that decision and denied the refund requests. On the Association's appeal to the Arizona Board of Tax Appeals, Division Two, the Board held that the refunds should be granted.

¶ 11 ADOR brought this action in the tax court. On cross-motions for summary judgment, the tax court ruled for ADOR. It concluded:

For the purposes of taxation of transient lodging, "transient" is defined as "any person who either at his own expense or at the expense of another obtains lodging space or the use of lodging space on a daily or weekly basis, or on any other basis for less than thirty consecutive days."*A.R.S. § 42–1310.10(A)*.

Havasu Dunes Timeshare Owners do not have an undivided interest in the whole property. They each own an undivided fractional interest (1/52) in a particular unit, plus an undivided interest in the common areas. Each owner owns one week in a particular type of unit. Any use beyond that one week, such as "bonus use," is the use of space owned by another. This use of lodging space owned by someone else, on a weekly basis, for less than thirty

consecutive days is transient lodging. The income received by Defendant for bonus use is taxable under A.R.S. § 42–1310.10.

## ANALYSIS

¶ 12   The Association contends that, as a matter of law, the tax court misapplied A.R.S. section 42–1310.10 in ruling for ADOR. The Association bases this contention on two related theses: first, that an interval owner, who resides in one of the Complex's units under the non-interval bonus use program, does not constitute a "transient lodger"; and second, an interval owner's non-interval bonus use assessment does not constitute income to the Association from the taxable business of providing lodging to transients.

¶ 13   The Association's reasoning in support of the first thesis is that A.R.S. section 42–1310.10 taxes the business transaction of providing accommodations to a temporary lodger. A transient lodger is one who pays fees to sleep on another person's property and does not possess any ownership rights in the property in which he is lodging and is not responsible for the obligations and costs of property ownership.

¶ 14   In contrast, argues the Association, an interval owner is not a temporary lodger when he/she makes non-interval use of a unit. The Association reasons, pursuant to the CC & Rs, each owner is a co-tenant owner of each condominium unit of the property with all other owners. As co-owners each has the right to reside in and use any unoccupied condominium unit and common element of the property at any time, and is jointly and severally liable for all expenses of the property. Accordingly, because A.R.S. section 42–1310.10 taxes only the revenues received from the arms-length business transaction of a person paying for the right to obtain the use of another's property for lodging accommodations, the non-interval bonus use program does not render the Association liable for transient lodging privilege taxes.

¶ 15   The Association's argument is flawed. Its mistake is in asserting that the Havasu Dunes' CC & Rs grant every member of the Association an ownership interest in every unit in the Complex. The CC & Rs do no such thing. As we observed above, each interval unit owner has an undivided fractional interest in only "a particular unit." The interval unit owner also has an undivided interest in the "common elements," but the CC & Rs define these specifically to exclude the Complex units. Accordingly, the owner does not occupy a unit as a co-owner under the non-interval bonus use program. He has at most a conditional contract right to purchase the use of a unit at a favorable rental rate.

¶ 16   Even assuming every member of the Association has an ownership interest in every unit in the Complex, a member who stays in a unit under the non-interval bonus use program is still paying a fee to sleep on property that belongs to other persons. As the Association itself acknowledges, "Appellant is the Owners collectively." The Association's argument would support the view that an individual shareholder of the Marriott Corporation, who stays a week in a Marriott hotel to attend a trade-related convention, is not a transient lodger, but actually an owner staying on his own property. Such a contention leads to an absurd result.

¶ 17   Further, and more importantly, all of the Association's detailed analysis of the term "transient lodger," with reference to case law and secondary authorities, is immaterial. We agree with ADOR that:

> There is no need to delve into the concepts of ownership, dominion or control of the property occupied, revocability of occupancy, the amount of the lodging fee vis-a-vis expenses of maintaining the property occupied, the arms-length nature of the transaction, or any of the other factors that Havasu insists are relevant. That is because the Arizona legislature *has defined transients for us in the statute.*

As noted above, A.R.S. section 42–1310.10(A) defines "transient" as "any person who either at his own expense or at the expense of another obtains lodging space or the use of lodging space on a daily or weekly basis, or on any other basis for less than thirty consecutive days." An interval owner who stays a week or two in a unit under the non-

interval bonus use program is just such a person.

**■** ¶ 18   In support of its thesis that an interval owner's non-interval use payment for a unit does not constitute income to the Association from the taxable business providing lodging to transients, the Association argues:

> A.R.S. § 42–1310.10 simply does not impose a tax on a property owners' [sic] payments for the expenses they incur from owning and using their property. A.R.S. § 42–1310.10 taxes the arms-length business transaction of a person paying for the right to use lodging accommodations on property owned by another. Here, the Department is taxing the Owners' payments to their fiduciary, the Appellant, for the payment of the Owners' expenses of owning and maintaining the Property.

. . . .

> [T]he Owners do not transact business with the Appellant when they contribute assessments and dues. The Owners simply deposit their share of homeowner expenses with the Appellant which in turn manages the money and uses it to pay Property expense obligations of the Owners.

¶ 19   The Association is wrong. The non-interval bonus use program consists of a random series of transactions between the owners as a collective entity acting through the Association, and individual owners acting only for themselves. In each such transaction, the individual owner pays the collective entity money for lodging in addition to that which his ownership of interval units entitles him. Contrary to the thrust of the Association's reasoning, taxing these transactions is not at all the equivalent of taxing a family on its expenditures for living in its own house.

¶ 20   Additionally, the language of the taxing statutes does not support the Association's thesis. Section 42–1310.10 taxes "the business of operating" various residential premises "for occupancy by transients." The

Association does not dispute the proposition that it "operates" the Complex, albeit through RCI Management. Moreover, we have established above that members of the Association participate in the non-interval bonus use program as "transients" within the meaning of the statute.

**■** ¶ 21   Finally, the Association's role in the program constitutes a "business" activity because that activity is "engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly." A.R.S. § 42–1301(1) (Supp.1997). "Gain, benefit or advantage" within section 42–1301(1) is not restricted to profits. *State ex rel. Arizona Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Order of Moose, Inc.,* 187 Ariz. 242, 246, 928 P.2d 666, 670 (App. 1996). Further, "any activities a nonprofit corporation carries on which afford 'gain, benefit or advantage' to its members constitute 'business.'" *Id.* at 245, 928 P.2d at 669 (citing *Tempe Life Care Village,* 148 Ariz. 264, 268, 714 P.2d 434, 438 (App.1985)). As ADOR correctly states:

> Here, Owners benefit from the bonus use, which enables them to maximize their use of the Resort on a cost-efficient basis. The coordination of the bonus use by Havasu on a first-come, first-served basis results in an orderly, fair administration of the bonus use by the Owners. Havasu's collection of fees for bonus use defrays the expenses associated with the Owners' bonus use stays and fairly apportions the expenses of maintaining the Resort with the amount of use by a given Owner. . . . The bonus use program provides a gain, benefit, or advantage to the Owners; Havasu's activities in administering the bonus use program constitute a business, which is taxable under A.R.S. § 42–1310.10.

¶ 22   The administrative decision in *National Land Management, Inc. v. Director of Revenue,* No. RS–81–0639, 1984 WL 16268 (Mo. Admin. Hrg. Com. June 6, 1984), relied on by the Association, fails to support its analysis.[1] *National Land* involved a taxpay-

---

1. The Association also relies on *City of Palm Springs v. Palm Springs Tennis Club Owner's Association,* No. E006020 (Cal.App.1989).

ADOR contends that it is an unpublished decision without precedential value. Since our own search for this opinion through public resources

er's sales of thirty-year, one-to-four-week per year timeshare interests in log cabins and rooms of a camping lodge. The question raised was whether income from timeshare occupancy constituted taxable tangible personal property and/or "innkeeper" services. *Id.* at \*3, \*7. The Missouri Administrative Hearing Commission held that the taxpayer's timesharing accomodations did not fall within traditional concepts of lodging and, hence, were not subject to Missouri Sales Tax. *Id.* at \*7–8.

¶ 23　The holding in *National Land* is not pertinent to the distinct question presented here because, unlike the Missouri authorities, ADOR does not seek to tax the amounts paid by owners of timeshare interest. Rather, ADOR seeks to tax sums paid by timeshare owners for lodging beyond the interval interest they have purchased. The taxability of payments by timeshare owners for lodging beyond their interval interest was not before the Missouri Administrative Hearing Commission. Indeed, the taxpayer in *National Land* conceded from the outset that all its receipts from overnight stays, presumably including those charged at a twenty-five percent discount to timeshare purchasers, were subject to taxation. *Id.* at \*2.

## CONCLUSION

¶ 24　The tax court did not err in granting judgment for ADOR. The judgment is affirmed.

RYAN and THOMPSON, JJ., concur.

was unavailing, and neither party provided us with a copy, we are inclined to accept ADOR's contention as true. The Association's use of such in its analysis in the tax court and in this court is of questionable propriety. *ASARCO, Inc. v. Industrial Comm'n,* 122 Ariz. 241, 244, 594 P.2d 107, 110 (App.1979). Thus, we decline to consider it.