**SQUARE 345 LIMITED PARTNERSHIP,**
Appellant,

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 04–TX–97.

District of Columbia Court of Appeals.

Argued May 10, 2005.
Decided May 24, 2007.

---

Miriam L. Fisher, with whom James N. Mastracchio was on the brief, for appellant.

Mary L. Wilson, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General for the District of Columbia at the time the brief was filed, were on the brief, for appellee.

Before WASHINGTON, Chief Judge,[1] RUIZ, Associate Judge and SCHWELB, Senior Judge.[2]

WASHINGTON, Chief Judge:

This appeal is from an order of the Tax Division of the Superior Court granting summary judgment to appellee, the District of Columbia ("the District"), which held appellant Square 345 Limited Partnership's ("Grand Hyatt" or "hotel") attrition fee was subject to sales tax as the retail sale of a hotel room, pursuant to D.C.Code § 47–2002(2) (2001). We affirm.

**I.**

The material facts in this case are undisputed. Grand Hyatt operates a hotel at 10th and H Streets, N.W., in the District of Columbia. As part of its services, the hotel contracts with groups that have scheduled events, such as conferences, to stay at the hotel during the events. The contract requires the hotel to set aside a block of rooms ("room block") available at a lower rate for reservation until a certain date for participants of the event. In consideration for the hotel holding a room block, the group's participants have to reserve a minimum number of room nights[3] within the contractually-specified time period. If the minimum number of total room nights is not reserved and paid for by the event's participants, the group itself guarantees the difference between the actual room nights used and the minimum number of room nights guaranteed. Grand Hyatt refers to this as an attrition fee.

The District of Columbia's Office of Tax and Revenue ("OTR") tax auditors examined the Grand Hyatt's records for the 1998 and 1999 tax years and proposed tax deficiencies arising from the sales tax on attrition fees. The District assessed a retail sales tax[4] on the attrition fees, in the amount of $80,517.28, plus interest and penalties for late payment,[5] for a total assessment of $132,986.52.

The Grand Hyatt paid the assessment and timely filed a petition on November 9, 2001, seeking a ruling that the District improperly assessed the retail sales tax on the attrition fee, or, in the alternative, that the District should not have imposed penalties and interest. The parties filed cross-motions for summary judgment. On December 31, 2003, the Superior Court granted the District's Motion for Summary Judgment, finding that OTR properly imposed a tax on the attrition fees. Although the trial court failed to address the issues of penalties and interest specifically, it is clear from its order the court affirmed the total assessment imposed by the District.[6]

On appeal, Grand Hyatt contends that: 1) the fees charged by the hotel did not

---

**1.** At the time this case was argued, Judge Washington was an Associate Judge on the court. His official term as Chief Judge began on August 6, 2005.

**2.** At the time this case was argued, Judge Schwelb was an Associate Judge on the court. Judge Schwelb took senior status on June 24, 2006.

**3.** Room nights are calculated by multiplying the number of rooms set aside in the reserved block by the number of nights involved in the reservation.

**4.** Pursuant to D.C.Code § 47–2002.

**5.** Pursuant to D.C.Code § 47–4221 (2001).

**6.** The trial court's order states in pertinent part, "Ordered, that the District shall not refund to Petitioner the real property taxes paid on the property in the amount of $132,986.52," which includes interest and penalties.

constitute a taxable "retail sale" within the meaning of D.C.Code § 47–2002 because it did not "furnish" any rooms to "transients" when the group failed to make the requisite number of reservations; and, in the alternative, 2) asks this court to remand the case to the trial court for further proceedings because of the trial court's failure to address the issues of interest and penalties.

## II.

The central issue in this case is whether attrition fees are subject to a hotel sales tax. The hotel sales tax refers to the cumulative 14.5% tax imposed under D.C.Code §§ 47–2002(2) and—2002.02(1). D.C.Code § 47–2002 provides, in pertinent part:

> A tax is imposed upon all vendors for the privilege of selling at retail certain tangible personal property and for the privilege of selling certain selected services.... The rate of tax should be 10.05% of the gross receipts from the sale of or charges for any room or rooms, lodgings, or accommodations furnished to a transient by any hotel.

D.C.Code § 47–2002(2). "The term 'transient' means any person who occupies or who has the right to occupy any room or rooms, lodgings, or accommodations for a period of 90 days or less during one continuous stay." D.C.Code § 47–2001(n)(1)(C). Further, the hotel tax includes:

> [a] separate tax at the rate of 4.45% of the gross receipts for the sale or charges for any room or rooms, lodgings or accommodations furnished to a transient by any hotel....

D.C.Code § 47–2002(1). "Retail sale" and "sale at retail" mean "the sale in any quantity or quantities of any tangible personal property or service ... [including] the sale or charge for any room or rooms, lodging or accommodations furnished to transients by any hotel...." D.C.Code § 47–2001(n)(1)(C). While there is no dispute about the material facts in this case, the parties disagree as to the definition of the phrase "furnished to a transient" as stated in the relevant D.C.Code provisions and thus, whether the tax applies to the factual situation presented here.

## III.

■ The Grand Hyatt's principal argument on appeal is that the hotel sales tax is inapplicable to attrition fees because attrition fees are charged only when a group's participants fail to make the minimum room reservations. Specifically, appellant argues that D.C.Code § 47–2002 does not apply to attrition fees because that provision applies only to rooms actually furnished to transients and the hotel only charges an attrition fee when transients fail to occupy the rooms that are being held for them to reserve. The District responds that the tax is applicable because the hotel has reserved rooms that the group's participants, or transients, have the right to occupy. Thus, the attrition fee is charged for a room that is being held for a transient. Alternatively, the District argues, the group who enters into the contract with a hotel should be considered the transient because it makes the block reservation on behalf of its participants and pays the total contracted costs of the rooms should the participants fail to do so.

■ In reviewing summary judgment decisions, we conduct an independent review of the record and apply the same standard as the trial court in considering whether the motion was properly granted. *See Burt v. First Am. Bank,* 490 A.2d 182, 184–85 (D.C.1985). Summary judgment is appropriate if, when viewing the record in the light most favorable to the non-moving party, there are no genuine issues of mate-

rial facts in dispute, and the moving party is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *see Abdullah v. Roach*, 668 A.2d 801, 804 (D.C.1995). The trial court's grant of summary judgment will be set aside only for errors of law. *See* D.C.Code § 47–3304(a); *District of Columbia v. Acme Reporting Co.*, 530 A.2d 708, 712 (D.C.1987).

■ "In construing acts of Congress, 'we must first look to the language of the statute and, if it is clear and unambiguous, give effect to its plain meaning.'" *Acme Reporting Co., supra*, 530 A.2d at 712 (quoting *Office of People's Counsel v. Public Serv. Comm'n*, 477 A.2d 1079, 1083 (D.C.1984)); *see George v. Dade*, 769 A.2d 760 (D.C.2001). Further, it is well-settled that if the statute in controversy is unclear and ambiguous, "tax laws are to be strictly construed against the state and in favor of the taxpayer." *Id.* at 712. At the same time, "tax laws ought to be given a reasonable construction, without bias or prejudice against either the taxpayer or the state, in order to carry out the intention of the legislature and further the important public interests which such statutes serve." *Id.* As this issue has never before been considered by this court, we must first determine, as a statutory matter of law, what Congress intended by the use of the term "furnished to a transient" in the District's tax provisions.

■ The statute permits the District to tax the hotel "for the privilege of selling certain selected services," including the "sale of or charges for any room or rooms, lodgings, or accommodations furnished to a transient by any hotel." D.C.Code § 47–2002(2); *see Acme Reporting Co., supra*, 530 A.2d at 712. The Grand Hyatt provides a "service" when it sets aside a room block for a group and its participants at a discounted rate for a specified period of time. Once the group contracts for the room block, the group's participants obtain the right to reserve a room at the favorable rate. During the contractually specified period, no persons other than the group's participants are permitted to reserve the rooms set aside in the room block. This exclusive right to occupy the rooms, upon reservation, thereby renders the group's participants plainly within the definition of transients as provided by the Code. *See* D.C.Code § 47–2001(n)(1)(C) (defining "transient"). The statute does not require the transient to actually exercise his or her right to occupy in order for the service to be taxable; therefore, the attrition fee falls within the category of taxable events covered by D.C.Code § 47–2002.

This conclusion is consistent with *Bedford v. Vermont Dep't of Taxes*, in which the Supreme Court of Vermont addressed a strikingly similar set of facts. *See* 146 Vt. 376, 505 A.2d 658, 658–59 (1985). In *Bedford*:

> [T]axpayers publicly offered for lease privately-owned condominium units for short-term time periods. When a lessee cancelled his lease prior to occupancy, he forfeited some or all of the cancellation deposit. . . . If the lessee cancelled more than twenty-one days before occupancy, he was refunded all but twenty-five dollars of his cancellation deposit. The twenty-five dollars was kept by the taxpayer as a "booking fee."

*Id.* at 658–59. The question presented before the Supreme Court of Vermont was whether "booking fees" were subject to the provisions of 32 V.S.A. § 9241, which in pertinent part imposes a Meals and Room Tax of six percent of the rent of each occupancy. *Id.* at 659–60. The taxpayers argued that because the booking fee was only retained when the lessee failed to occupy the leased condominium unit, the retention of the booking fee was not subject to the tax provision. The Supreme

Court of Vermont disagreed and found that "the statutory definition of the term 'occupancy' includes a lessee's right to the use or possession of leased rooms." *Id.* at 659. While the lessee never realized that right, the court found that "until such time as the full rental fee has been paid, [the lessee's right to occupancy] constitutes a contingent right to occupancy" nonetheless subject to the Meals and Rooms Tax. *Id.* at 660. In reaching its conclusion, the court relied on the language of the statute, emphasizing that "nothing within the statute indicates a legislative intent to tax only fully vested rights to occupancy." *Id.*

■ Just as the Supreme Court of Vermont interpreted the contingent right of occupancy as a taxable event, we also hold that the definition of transients encompasses persons who have the right to occupy, upon reservation, the rooms set-aside in the room block. We reiterate, just as the Supreme Court of Vermont did in *Bedford*, that the statute simply does not require the actual exercise of a person's right to occupy in order to be subject to the tax provision. Moreover, we note that in other courts which have interpreted similar contingent rights have also found them to be taxable.[7] *See, e.g., Arizona v. Havasu Dunes Timeshare Ass'n, Inc.,* 191 Ariz. 506, 958 P.2d 447 (1998) (holding fees charged on interval unit owners for the right to obtain the use of another available unit for a week in addition to the interval unit owned were taxable pursuant to ARIZ. REV.STAT. § 42–1310.10 because owners ac-

quired a contingent contractual right to purchase the use of another unit at a favorable rate).

For the foregoing reasons we agree with the trial court that the attrition fee was properly taxed by the District.

## IV.

### Penalties and Late Fees

■ Grand Hyatt's second claim is that even if this court upholds the trial court's interpretation of the statute with respect to the attrition fee, the trial court erred by failing to address its argument that it should not be required to pay the interest and late payment penalties imposed by the District. Specifically, the hotel requested that the trial court invoke its powers of equity to reduce the total assessment by striking the penalties and interest because its failure to pay taxes on attrition fees was based on a reasonable interpretation of the sales tax statutes. The District responds that only the Mayor of the District of Columbia, pursuant to D.C.Code § 47–2024(1)(B), is "authorized and empowered" to "compromise dispute[d] claims in connection with the tax hereby imposed[.]" Although this is an open question, we need not decide the issue here because even assuming, solely for the sake of argument, that the trial court has equitable jurisdiction to compromise tax claims, we are satisfied that the trial court did not err in declining to exercise its equitable jurisdiction in this case.

---

**7.** Although courts of other jurisdictions reach similar conclusions to the one reached here, a handful of state legislatures and their subcommittees, in response to *Bedford*, have taken steps to clarify their positions and in some cases have come to different results. For example, the Committee on Government Efficiency Appropriations advised the Florida Senate that attrition fees are penalties or liquidated damages and, thus, not subject to tax. Sales and Use Tax—Cancellation Fees and Similar Charges for Transient Rental Accom-

modations, Transient Rentals Provided for No Consideration, Cancellation Fees and Similar Charges for Catering and Floral Sales Sections; 212.02, 212.03, 212.15, F.S. Rule: 12A–1.061, Florida TAA 00A–015 (March 30, 2000). *See also,* Alexander J. Laskowski, *Room Penalty Charges: Are They Subject to Tax?,* http://www.hftp.org/ members/bottom-line/backissues/2002/BL17_2/penalt.htm; Jon VanZile, *Can You Save Attrition Tax?,* http://www.corporate-inc-tra vel.com/CIT/Archives/stories2000/stories-june2000.htm.

██ "It is axiomatic that equity has no jurisdiction over a controversy for which there is a complete and adequate remedy at law. Further, if it appears that the absence of a remedy at law is due to plaintiff's failure to pursue that remedy, then equity will not intervene and the complaint should be dismissed." *Marshall v. District of Columbia*, 458 A.2d 28, 29–30 (D.C.1982) (internal citations and quotations omitted). In this case, the hotel has an adequate remedy at law. By statute, the hotel is permitted the opportunity to challenge OTR's tax assessment. *See* D.C.Code § 47–3303. In fact, the hotel sought this remedy and it failed to establish its legal claims before the trial court. *See Ross v. Hacienda Coop., Inc.*, 686 A.2d 186, 192 (D.C.1996) (Wagner, C.J., dissenting) (stating that equity may not intervene where the movant failed to establish its legal claims). In addition, the hotel also has the right to request that the Mayor reduce the total assessment by either waiving or reducing the interest and penalties, pursuant to D.C.Code § 47–2024. We take care to emphasize that not only was this legal avenue available to the hotel, but that the Mayor, through OTR, actually offered to compromise the penalties and interest after the administrative decision was rendered in this case—an offer that the hotel rejected. In light of these circumstances, this court is satisfied that the trial court did not err in choosing not to exercise its equitable jurisdiction in a case where the party before it had an adequate legal remedy, one that was offered, but rejected by the party that now seeks the court's shelter in equity.

Accordingly, for the foregoing reasons, the judgment of the trial court is hereby

*Affirmed.*